**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **NATASHA LAQUINCE RICHARDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   CIV-13-467-R** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Natasha Richardson (Plaintiff) seeks judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying her claim for supplemental security income (SSI) payments under the Social Security Act. The matter is before the undersigned Magistrate Judge on referral by United States District Judge David L. Russell for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Having carefully reviewed the administrative record (AR) in conjunction with the arguments and authorities of both parties, the undersigned recommends the Commissioner's decision be affirmed.

## I. Administrative proceedings.

In support of her September 2008 application for SSI payments, Plaintiff stated that her "Bi[]polar" condition and many "different mood swings"

contributed to her disabling condition. AR 163. She stopped working because of her mental condition, the boss was acting real mean to me, and [I] quit [on July 15, 2008]." *Id.*

The Social Security Administration (SSA) denied Plaintiff's claim. *Id.* at 57-60. The SSA denied her request for reconsideration. *Id.* at 68-70. At her request, an Administrative Law Judge ("ALJ") conducted a July 2010 hearing where Plaintiff, represented by counsel, and a vocational expert appeared and testified. *Id.* at 24-53, 72-73. In her June 2011 hearing decision, the ALJ determined that Plaintiff suffered from a severe combination of impairments: a mood disorder, a personality disorder, and substance abuse (marijuana primarily, also alcohol, Valium, and other street drugs). *Id.* at 16. The ALJ found Plaintiff was unable to perform any past work. *Id.* at 22. Given the entirety of the record evidence, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) [1] "to perform a full range of work at all exertional levels but with some nonexertional limitations." *Id.* at 20. The ALJ concluded that Plaintiff could perform the job of a packer, a conveyor-line bakery worker, or an eyeglass frame polisher, pursuant to the vocational expert's testimony. *Id.* at

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

23.   As such, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act.   *Id.*   The SSA Appeals Council declined Plaintiff's request for review of the ALJ's decision, *id.* at 4-9, and she then sought this Court's judicial review of what is now the Commissioner's final decision.   Doc. 1.

## II.   Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.   *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail).   Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments.   20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).   Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national

3

economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Standard of review.

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

### B. Plaintiff's claims of error.

Plaintiff contends that the ALJ committed reversible error by (1) "fail[ing] to mention uncontroverted and/or significant probative evidence indicating that [Plaintiff] would be unable to interact with anyone, including

supervisors or coworkers, or maintain concentration and persistence to any significant degree on a regular and continuing basis"; Doc. 14, at 5-6, and (2) engaging in a legally flawed and unsupported analysis of Plaintiff's substance abuse.  *Id.* at 7-11.[2]

### 1.    The ALJ's analysis of the evidence.

Plaintiff argues the ALJ failed to mention evidence of:

- Plaintiff's moderate to severe problems in the areas of Feeling/Mood/Affect, Thinking/Mental Status, Social/ Interpersonal, and/or Functional Role Performance due to auditory hallucinations, agitation, severe mood swings, anxiety, paranoia, racing thoughts, concentration and persistence problems, social difficulties, and/or trouble holding a job.  AR 16-22, 247-248, 250-251, 253, 336-337, 340, 344, 445;

- Objective medical findings of an angry, anxious, and irritable mood; diminished memory and concentration, slowed speech, and a lack of basic knowledge (like the ability to distinguish a city from a state).  *Id.* at 16-22, 246, 260, 347, 457;

- Observations by a state agency interviewer of concentration and coherency deficits, (*id.* at 16-22, 160-161), SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996);

- Her loss of social relationships due to mental difficulties.  AR 16-22, 251-252, 340;

---

[2]    Plaintiff acknowledges that while she "suffer[s] from physical impairment and hypertension . . . it is [her] mental impairments that are of relevance in this case."  Doc. 14, at 2.

- Her having stabbed her brother, attempted suicide, and been locked in a closet by a foster parent as a child (when her mental problems were allegedly not as severe). *Id.* at 16-22, 248, 250-251, 257, 259, 334, 336; and

- Plaintiff's having worked at more than 20 jobs from 1996 through 2007 despite having a desire to work. *Id.* at 16-22, 154-157, 335, 342, 382.

Doc. 14, at 6.

Contrary to Plaintiff's claim, the record establishes that substantial evidence supports the ALJ's factual findings and that she applied the correct legal standards. Grouping the first four sets of information that Plaintiff points to above, those focusing on medical findings relating to Plaintiff's mental condition, as well as her loss of social relationships, the undersigned concludes the ALJ *did* consider these in making her findings. AR 17-19 (consideration of treatment records from Cope Inc.; North Rock Medication Clinic; a consultative psychological examination; a non-examining State agency mental health expert; and North Care Intake). The ALJ noted that Plaintiff has moderate difficulties in social function, concentration, persistence, or pace. *Id.* at 20, 22. The ALJ found that Plaintiff had as a severe impairment both a mood and a personality disorder. *Id.* at 16.

The ALJ also observed that Plaintiff reported she has no friends, was unable to get along with authority, had mood swings, and reported irritability and paranoia, sometimes hearing voices, and inability to sleep. *Id.* at 17.

The ALJ noted that Plaintiff could relate to the public, co-workers, and supervisors on a superficial basis. *Id.* at 22, 18. The ALJ discounted Plaintiff's credibility regarding the intensity, persistence, and limiting effects of her symptoms – to the extent Plaintiff suggests the ALJ overlooked other evidence, much of the evidence consists of Plaintiff's self-reported symptoms. *Id.* at 21, *see e.g.*, *id.* at 247-48, 250-51, 334, 337.[3]

As to the Plaintiff having worked more than twenty jobs, during the hearing, the ALJ laboriously questioned Plaintiff regarding each position. *Id.* at 28-36. The ALJ noted that she stayed with one job no more than four months, getting "bored," and she would simply call and say she is not going to work. *Id.* at 21. The ALJ questioned Plaintiff's veracity, noting that she repeatedly explained that she "got into it with the manager" or something similar as a reason for leaving a job. *Id.* The ALJ observed this explanation sounded "parroted" rather than a true recollection. *Id.*

The ALJ's hypothetical question to the vocational expert further belies Plaintiff's argument: "If you would presume an individual of the same age, education, work experience as the claimant, presume that the individual would be able to perform simple tasks, *could not work with the general public. Could work with coworkers and supervisors on a superficial basis*. [Can you

---

[3]     Plaintiff does not challenge the ALJ's credibility assessment.

identify representative occupations that such an individual could perform?]" *Id.* at 51 (emphasis added). And the vocational expert identified three such occupations. *Id.* at 52.

Finally, the undersigned notes that each job the vocational expert identified was unskilled. *Id.* at 23. As unskilled work, it also "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857, at *4 (1985). Each bore a reasoning level of no higher than 2, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See* Dictionary of Occupational Titles (4th ed. 1991) (DICOT) 929.684-010 (Packer), 1991 WL 688162, DICOT 524.687-022 (Bakery Worker, Conveyor Line (reasoning level 1)), 1991 WL 674401; DICOT 713.684-038 (Polisher, Eyeglass Frames), 1991 WL 679267. And most importantly, each listed the ability to interact with people, that is, "Taking Instructions/Helping" as "Not Significant." See DICOT 929.684-010 (Packer), 1991 WL 688162; DICOT 524.687-022 (Bakery Worker, Conveyor Line), 1991 WL 674401; DICOT 713.684-038 (Polisher, Eyeglass Frames), 1991 WL 679267. The ALJ found, based on the vocational expert's testimony, that Plaintiff could work in each position, and that each was a job existing in significant numbers in the national economy. AR 23.

## 2. The ALJ's substance abuse analysis.

Plaintiff maintains that the ALJ erred when the ALJ "made no . . . determination" that her symptoms, including those "related to substance abuse," "were sufficient to render her disabled." Doc. 14, at 10. As the Commissioner points out, Plaintiff's premise requires that the ALJ make a finding regarding her "disability due to substance abuse." Doc. 15, at 6.[4] The ALJ never made such a finding, and the cases Plaintiff cites are inapposite. Doc. 14, at 7-11; Doc. 15, at 6. Plaintiff correctly outlines the law in this area: "[*I*]*f a finding is made* that the claimant is disabled and there is medical evidence of drug addiction . . . an ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs . . . and determine whether those remaining limitations are disabling." Doc. 14, at 8 (emphasis added). The ALJ made no such finding. With the exception of suggesting that Plaintiff's symptoms were sufficient to render her disabled, Plaintiff does not challenge the ALJ's actual conclusions.

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends

---

[4] Plaintiff did not exercise her option to file a reply brief directing the court to perceived flaws – whether factual or legal – in the Commissioner's response.

the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by April 10, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 21st day of March, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE